UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ANTHONY MANDIGO (#325803)                          CIVIL ACTION

VERSUS

SEC. OF D.O.C., JAMES LeBLANC, ET AL.              NO. 12-0170-JJB-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 18, 2013.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ANTHONY MANDIGO (#325803)                                    CIVIL ACTION

VERSUS

SEC. OF D.O.C., JAMES LeBLANC, ET AL.                        NO. 12-0170-JJB-RLB

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss, rec.doc.no. 30. This motion is not opposed.

The pro se plaintiff, a prisoner confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Secretary James LeBlanc, Warden Burl Cain, Dr. Jonathan Roundtree, Ass't Warden Kenneth Norris, and unidentified "John Doe" defendants, complaining that the defendants have violated his constitutional rights through deliberate indifference to his serious medical needs.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and more recently, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level".  Bell Atlantic Corp. v. Twombly, supra, at 555.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, supra, at 678, quoting Bell Atlantic Corp. v. Twombly, supra.  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Further, "[a] document filed pro se is to be liberally construed ... and a pro se Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id. (citations omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." Ashcroft v. Iqbal, supra, at 678 (internal quotation marks omitted).

In his Complaint, as amended, the plaintiff alleges that he suffers with sickle cell anemia and, on February 10, 2010, began to experience pain and numbness in his left ankle which he believed signaled the early stage of a potential ulcerous laceration to his ankle. He was initially provided with treatment by Dr. McMurdo at LSP (not named as a defendant herein), but when this treatment did not result in improvement, the plaintiff was referred to the LSP infirmary where defendant Jonathan Roundtree prescribed daily cleaning and wrapping of the ankle. Although the plaintiff's ankle initially showed signs of improvement, the condition worsened and, in July, 2011, became an open sore. According to the plaintiff, he was again seen by Dr.

McMurdo at that time, on July 22, August 8, 2011, respectively, and on August 26, 2011, Dr. McMurdo prescribed changes in the plaintiff's course of treatment. The plaintiff was thereafter seen by defendant Dr. Roundtree on August 30, 2011, who discontinued one medication ("Melgisorb"), prescribed another medication ("Keppra"), and ordered dry dressings for the plaintiff's ankle. The plaintiff thereafter obtained regular follow-up treatment at LSP and was seen, for the most part, by physicians other than Dr. Roundtree, notably on September 1, 2011 (Dr. McMurdo), September 6, 2011 (Dr. Collins), September 16, 2011 (not stated), September 29, 2011 (Dr. McMurdo), September 30, 2011 (not stated), October 5, 2011 (unidentified medical technician), October 8, 2011 (Dr. Momah), and October 13, 2011 (not stated). On several of these occasions, additional medications were prescribed in an attempt to treat the plaintiff's condition, and on the last-stated date, October 13, 2011, the plaintiff was transported to the LSP infirmary and placed in the hospital ward under the care of defendant Roundtree. The next day, October 14, 2011, the plaintiff was allegedly rushed to Earl K. Long Hospital in Baton Rouge, Louisiana ("EKL"), after his red blood count dropped dramatically, and he was given an emergency blood transfusion. According to the plaintiff, the physician at EKL advised the plaintiff that the plaintiff's blood had become toxic due to mis-treatment of the ulcerated ankle at LSP and that the plaintiff likely would have died had prison officials not transported him to EKL. According to the plaintiff, although the "dry washing" prescribed by Dr. Roundtree was "a common practice given to all offenders with open wounds," this treatment was not appropriate for the plaintiff's condition, and it is therefore "highly possible" that such treatment "contributed to" the plaintiff's condition and "triggered a toxicant in his blood that turned into poison." See Amended Complaint, rec.doc.no. 15, at p. 7. Finally, the plaintiff asserts that prison officials routinely contract with specialists at LSP to deal with specialized problems encountered by

inmates and that he should therefore be allowed to obtain treatment by a specialist in the care of sickle cell anemia. He further complains that the administrative grievance which he filed relative to the foregoing misconduct by the defendants was improperly handled by prison officials and did not result in better treatment of his condition.[1]

In response to the plaintiff's allegations, the defendants initially seek dismissal of the plaintiff's claim for monetary damages asserted against them in their official capacities. In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks recovery of monetary damages against either a state or its officials acting in their official capacities because these officials are not seen to be "persons" under § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989). Specifically, in Hafer v. Melo, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. Id. at 25. Accordingly, the plaintiff's claim for monetary damages asserted against the defendants in their official capacities is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in his individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state. Id. In addition, the plaintiff's claim for injunctive relief asserted

---

1 In determining whether to grant a motion to dismiss, a district court may generally not "go outside the complaint." Scanlan v. Tex. A & M Univ., 343 F.3d 533 (5th Cir. 2003). When ruling on a motion to dismiss in a case filed by a pro se plaintiff, however, a district court may consider documents attached to the plaintiff's Complaint and those materials subsequently filed. Howard v. King, 707 F.2d 215 (5th Cir. 1983); Clark v. Huntleigh Corp., 119 Fed. Appx 666 (5th Cir. 2005) (finding that because of the plaintiff's pro se status, "precedent compels us to examine all of his complaint, including the attachments").

against the defendants in their official capacities is not prohibited under the Eleventh Amendment because such a suit is not treated as a claim against the state.  See Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); 15 Am. Jur. 2d Civil Rights § 101.

Turning next to the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities, the defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims.  Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  Huff v. Crites, 473 Fed. Appx. 398 (5th Cir. 2012).  As enunciated in Saucier v. Katz, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights.  Second, the district court looks to whether the rights allegedly violated were clearly established.  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.  Id. at 200.[2]

Undertaking the Saucier analysis, the Court concludes that the defendants' motion should be granted.  Initially, with regard to the plaintiff's claims asserted against defendants James

---

2. The United States Supreme Court has held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory.  Pearson v. Callahan, 555 U.S. 223, 235 (2009).  Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

LeBlanc, Burl Cain, and Kenneth Norris, the Court finds that the plaintiff has failed to allege sufficient connexity between the actions of these defendants and the alleged constitutional violations complained of. Pursuant to well-settled legal principles, in order for a prison official to be found liable under § 1983, the official must have been personally involved in conduct causing an alleged deprivation of a constitutional right or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983). Any allegation that these defendants are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or respondeat superior is alone insufficient to state a claim under § 1983. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009), citing Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). See also Bell v. Livingston, 356 Fed. Appx. 715 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of respondeat superior or vicarious liability"). In the absence of direct personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. Lozano v. Smith, supra.

      In the instant case, the plaintiff has failed to allege that defendants LeBlanc, Cain and Norris have had any personal involvement in the provision of the plaintiff's medical care. All that the plaintiff has alleged relative to these defendants is that defendants LeBlanc and Cain have supervisory authority at the prison and are generally responsible for the health care provided at that facility, that Warden Cain failed to act upon a letter addressed to him from the

plaintiff's attorney on October 13, 2011, advising of the plaintiff's alleged need for medical treatment, and that defendant Norris, at the request of defendant Cain, responded to and denied the plaintiff's administrative grievance filed relative to his medical care.  It is clear that these allegations constitute, for the most part, assertions of mere supervisory authority on the part of these defendants and that, in the absence of any suggestion that these defendants were personally involved in providing the plaintiff with medical care, there is no basis for the imposition of liability against them.  Moreover, addressing the plaintiff's specific assertions, his allegation that the LSP medical department has "a history of ... rendering poor health care to prisoners" is a mere conclusory statement which is not sufficient to support a claim under § 1983.  Further, his complaint regarding the alleged failure of defendant Cain to respond to a letter from the plaintiff's attorney dated October 13, 2011, is without merit inasmuch as the plaintiff admits that he was transported to EKL for treatment on October 14, 2011, the very next day, thus rendering any such failure of no effect.  Finally, the plaintiff's assertion that defendant Norris improperly denied the plaintiff's administrative grievance fails to state a meritorious claim inasmuch as an inmate plaintiff is not constitutionally entitled to an investigation into his administrative complaints or to a fair or favorable response thereto, and there is no procedural due process right inherent in such a claim.  See Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005) (holding that an inmate "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction," and a claim "arising from the alleged failure to investigate his grievances is indisputably meritless").  Accordingly, the plaintiff's claims regarding the alleged conduct of defendants LeBlanc, Cain and Norris are without legal foundation and should be dismissed.

      Turning to the plaintiff's claim asserted against defendant Jonathan Roundtree, the Court concludes that this claim is subject to dismissal as well.  In this regard, in order for an inmate-

plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care has been denied and that the denial constituted "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); Johnson v. Treen, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff received the treatment or accommodation which he believes he should have is not the issue. Estelle v. Gamble, supra. Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra. Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 839-30 (1994). As stated in Farmer, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. The deliberate indifference standard sets a very high bar: the plaintiff must establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001), quoting Estelle v. Gamble, supra. Further, a mere delay in treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).

Applying the foregoing standard, it appears clear that the plaintiff's medical complaints at LSP were not ignored, that he has received substantial medical attention in response to his complaints, and that if anything, his claim is one of mere negligence or, at most, medical malpractice, neither of which is cognizable under § 1983. By the plaintiff's own admissions, he

was only seen and treated by defendant Roundtree on three occasions (July 19, August 30, and October 13 or 14, 2011) and on each such occasion, Dr. Roundtree prescribed treatment and medications for the plaintiff's leg. During the intervals between these visits, the plaintiff was seen and treated on numerous occasions by other physicians and health care providers, for whose actions defendant Roundtree is not legally responsible. Thus, while the plaintiff asserts that the actions of defendant Roundtree amounted to an intentional or deliberate refusal to provide medical treatment, this assertion is entirely conclusory and is not supported by the record before the Court. Moreover, contrary to the plaintiff's assertions, it appears from documentation attached to his pleadings that his transport to EKL on October 14, 2011, was precipitated not by a need for treatment of the referenced leg ulcer but, rather, because of a chief complaint of respiratory complications of two weeks' duration.[3] In fact, the medical records from EKL reflect that the plaintiff reported the referenced ulcer as being "well healing" at that time and, upon examination, the ulcer was noted to be no larger than 2 cm. and to be "clean, dry, and intact" with "[n]o purulence," and "no surrounding erythema ... or area of fluctuance." He was provided with a transfusion of two units of packed red blood cells, and this transfusion apparently resolved his acute sickle cell symptoms. Accordingly, while the plaintiff was apparently unhappy with the level of care provided to him at LSP, this unhappiness does not elevate his claim to one of constitutional dimension. To the contrary, it appears clear that the plaintiff's medical complaints were not ignored and that he received substantial medical attention during the time period of which he complains. The defendant's Motion to Dismiss, therefore, should be granted,

---

[3] In addition to the detailed recitation provided in his Complaint, as amended, of treatment afforded to him at LSP, the plaintiff has also provided, as attachments to his pleadings, a detailed recitation which was provided to him in response to his administrative grievance, see attachments to rec.doc.no. 1, and a copy of the medical records pertaining to his treatment at EKL in October, 2011, see attachments to rec.doc.no. 25.

dismissing the plaintiff's claim of deliberate medical indifference, with prejudice.

Finally, the plaintiff asserts that he should be provided with injunctive relief in the form of an Order compelling prison officials to provide him with better treatment at LSP, including treatment by a hematologist or other specialist in the care of patients with sickle cell anemia. This claim should also be rejected.  The plaintiff has not shown that his medical care has been deficient or that his condition is not susceptible of treatment by the trained physicians and health care providers employed at LSP, which providers are able to refer the plaintiff for treatment at outside facilities such as EKL when they conclude that such treatment is warranted.  The Fifth Circuit has held that it is not deliberate medical indifference to provide an inmate with medical care that is not "the best that money can buy."  See Mayweather v. Foti, 958 F.2d 91, 92 (5th Cir. 1992).  Accordingly, the plaintiff's claim for injunctive relief, in the absence of any showing that his care has been deficient, is simply another way for him to express mere dissatisfaction and disagreement with his treatment, and this is not sufficient to support a claim under § 1983.  See Burge v. Stalder, 54 Fed. Appx. 793 (5th Cir. 2002) (finding no entitlement to treatment by a specialist or deliberate indifference where prison officials failed to honor inmate's request for treatment by a such specialist); Alfred v. Texas Dept. of Criminal Justice, 80 Fed. Appx. 926 (5th Cir. 2003) (same).

The plaintiff also seeks to invoke the supplemental jurisdiction of this court over potential state law claims.  A district court, however, may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, in light of the Court's

recommendation that the plaintiff's federal claims be dismiss, the Court recommends that the exercise of supplemental jurisdiction over the plaintiff's state law claims be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims and that the defendants' Motion to Dismiss, rec.doc.no. 30, be granted, dismissing the plaintiff's claims asserted against the defendants, with prejudice, for failure to state a claim upon which relief may be granted.

Signed in Baton Rouge, Louisiana, on June 18, 2013.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**